**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 0:23-CR-60209-GAYLES**

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

v.

**MAXON ALSENAT,**

    **Defendant.**

_____/

**PRETRIAL DETENTION ORDER**

Pursuant to 18 U.S.C. § 3142, commonly known as the Bail Reform Act of 1984, the Court held a hearing on November 30, 2023, to determine whether Defendant Maxon Alsenat should be detained prior to trial. Assistant United States Attorney Bruce Brown appeared on behalf of the Government. Special Agent Benjamin Garnett of the Bureau of Alcohol, Tobacco, Firearms and Explosives appeared. Assistant Federal Public Defender Jan Christopher Smith, II appeared on behalf of Defendant, who was present.

The Court held a continued hearing in this matter on December 6, 2023. Assistant United States Attorney Trevor Jones appeared on behalf of the Government in place of Attorney Brown. Attorney Smith appeared with Defendant.

    **A. INTRODUCTION**

Defendant has been indicted for possessing a machine gun conversion device, in violation of 18 U.S.C. § 922(o)(1). DE 3. If convicted, he faces a maximum term of imprisonment of ten years. The Government moved under 18 U.S.C. § 3142(f)(1)(E) and (2)(A) for Defendant's

pretrial detention on the basis that no condition or combination of conditions will reasonably assure his appearance and the safety of the community.

### B. FINDINGS OF FACT

The Court took judicial notice of the Indictment and the Pretrial Services Report during the November 30 hearing. The Government proffered additional information on the record, and Special Agent Garnett testified under oath. The Court took judicial notice of the Amended Pretrial Services Report during the December 6 hearing. The Court considered all of the evidence in making its findings.

#### 1. The Government's Proffer

The Government proffered that, on June 7, 2023, Defendant sold two firearms and a silencer to an undercover agent ("UA"). Law enforcement later discovered that one of the firearms had been involved in a shooting that had occurred a few days before the June 7 sale. Defendant sold three machine gun conversion devices to the UA on June 21 and sold six more machine gun conversion devices to the UA on July 13. Defendant was able to give the UA information about the quality of the devices and instructions about how to use them. When law enforcement arrested Defendant on November 16, he was in possession of three machine gun conversion devices.

#### 2. Special Agent Garnett's Testimony

Special Agent Garnett adopted the Government's proffer as part of his testimony. Special Agent Garnett further testified that machine gun conversion devices, also called Glock switches, are meant to be installed on semi-automatic firearms to convert them into automatic firearms. Glock switches do not have any function other than firearm conversion. The Glock switches that Defendant sold were plastic pieces made using a 3D printer. Those Glock switches were made locally, and Defendant's source was local.

A confidential informant who had been communicating with Defendant introduced Defendant to the UA. The June 7 sale of firearms to the UA was audio and video recorded and took place in front of Defendant's residence. During the sale, Defendant indicated that he also could sell Glock switches. He and the UA thereafter communicated regarding the sale of Glock switches and negotiated a price. The June 21 sale of three Glock switches to the UA and the July 13 sale of six Glock switches to the UA were audio and video recorded and took place in front of Defendant's residence. Law enforcement tested several of the Glock switches and found them to be operational. Law enforcement continued to engage in sales with Defendant rather than arrest him immediately because law enforcement wanted to discover his source.

After the July 13 sale, law enforcement did not engage in further sales from Defendant for several months due to factors such as heavy caseloads and staffing shortages. He and the UA arranged to meet on November 16 at a shopping plaza in Broward County for an additional sale of Glock switches. Law enforcement arrested Defendant at that time and discovered that he was in possession of three Glock switches.

## C. THE PARTIES' ARGUMENTS REGARDING DETENTION

The Government moved under 18 U.S.C. § 3142(f)(1)(E) and (2)(A) for Defendant's pretrial detention on the basis that no condition or combination of conditions will reasonably assure his appearance and the safety of the community. The Government argued in support of detention that Defendant's criminal history includes several failures to appear for court proceedings, as well as a probation violation that remained pending when he was engaging in the sales to the UA. One of the firearms that Defendant sold on June 7 had been involved in a shooting only a few days prior, indicating that he was close to the shooter, although the Government has no evidence linking him to the shooting. Defendant then sold several Glock switches to the UA over the course of just

3

a few weeks. Defendant was conversant and knowledgeable about how the Glock switches worked. He faces a guideline range of four to six years' imprisonment. The Government has no confidence that he would appear for court proceedings given his prior failures to appear and the term of imprisonment that he is facing.

Defense counsel argued in rebuttal that the Government did not prove Defendant poses a danger to the community. Law enforcement engaged in sales with him beginning in June and did not arrest him to remove him from the community for several months, indicating that his case was not considered to be a high priority. Defendant's criminal history includes non-violence offenses such as the possession of cannabis and motor vehicle violations. Further, the Government did not prove Defendant poses a risk of flight. His prior instances involving failures to appear have been resolved, and he has no open warrants.[1]

Toward the end of the November 30 hearing, defense counsel requested an opportunity to contact Defendant's family members to determine whether someone who owns real property would be willing to co-sign on a bond in order to alleviate any concern that Defendant will flee. The Court granted the request to return to complete the hearing on a later date.

When the hearing resumed on December 6, defense counsel informed the Court that he had not located an individual who owns real property and is comfortable with co-signing on a bond. However, defense counsel asked that Defendant be released on electronic monitoring.

---

[1] Defense counsel also made oral motions to dismiss the Indictment for lack of federal jurisdiction and under the Second Amendment to the United States Constitution. The Court noted the motions for the record but made no rulings, stating that the motions should be raised to the District Judge assigned to this case.

### D. THE COURT'S CONCLUSIONS REGARDING DETENTION

The Court has considered the factors in 18 U.S.C. § 3142(g), the evidence, the parties' arguments, and the entire record. The Court concludes that Defendant should be detained pending trial for the reasons stated below and stated on the record during the hearing.

First, the Court finds that the Government has not met its burden to show that Defendant poses a danger to the community. Following his sales of Glock switches to the UA in June and July, law enforcement did not arrest him for several months and instead allowed him to remain in the community.

However, the Court finds that the Government has met its burden to show that Defendant poses a risk of flight and that no condition or combination of conditions will reasonably assure his appearance. The nature and circumstances of the alleged offense involve selling firearms and devices meant to convert semi-automatic firearms into automatic firearms. The weight of the evidence against Defendant is great and includes audio and video recordings of the sales. His history includes pretrial release and probation violations and several failures to appear for court proceedings. He allegedly engaged in the sales to the UA while on state probation. He is a lifetime resident of South Florida and has family members who live in the area. However, he has not located an individual comfortable with co-signing on a bond, and the Court would require a co-signer to be reasonably assured of Defendant's appearance for future court proceedings. Therefore, the Court finds by a preponderance of the evidence that no condition or combination of conditions will reasonably assure Defendant's appearance.

Accordingly, it is hereby **ORDERED** that Defendant Maxon Alsenat be remanded to the custody of the United States Marshals. The Court directs that Defendant be afforded reasonable opportunity for private consultation with counsel. On order of a court of the United States or on

request of an attorney for the Government, the person in charge of the corrections facility in which Defendant is confined shall deliver him to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida, this 6th day of December, 2023.

_____
PANAYOTTA AUGUSTIN-BIRCH
UNITED STATES MAGISTRATE JUDGE