UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.   23-60209-CR-GAYLES

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MAXON ALSENAT,

    Defendant.
_____/

## MOTION TO DISMISS INDICTMENT UNDER THE SECOND AMENDMENT

Mr. Alsenat is before this Honorable Court charged by indictment with one count of possession of a machine gun in violation of 18 U.S.C. § 922(o)(1). (DE 3). He respectfully submits that this Court should dismiss the indictment pursuant to Fed. R. Crim. P. 12(b)(3) because § 922(o)(1), either on its face or as applied to Mr. Alsenat/his case, violates the Second Amendment. *See New York State Rifle & Pistol Ass'n, Inc.* v. *Bruen*, 142 S. Ct. 2111 (2022) (finding parallel statute, § 922(g)(1), unconstitutional as applied); *pet. for cert. filed sub nom Garland v. Range*, Oct. 10, 2023 (No. 23-374).

### RELEVANT FACTUAL BACKGROUND

According to the government, on June 21, 2023, Mr. Alsenat sold to an undercover officer certain parts which, under federal law, constitute a machinegun.

Mr. Alsenat has no prior felony convictions. Moreover, his sole prior conviction—for a misdemeanor—stems from a trespass committed in 2016, when he

1

was just 19-years-old.

## ARGUMENT

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II. Last year, in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, the Supreme Court for the first time set forth a general test for assessing the constitutionality of firearm restrictions in which it rejected means-ends scrutiny and adopted a two-step "test rooted in the Second Amendment's text, as informed by history." 142 S. Ct. at 2127. Two principles underlie the test. *First*, at Step One of the new test, where "the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id.* at 2126. *Second*, if Step One is satisfied, the burden shifts to the government to "demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation," *id.*, and if it fails to meet that burden, the regulation on protected conduct may not stand. *See id.* at 2131.

Here, because Mr. Alsenat's alleged conduct is covered by the plain text of the Second Amendment, and because the government cannot show that § 922(o)(1) is consistent—either facially or as applied to Mr. Alsenat—with America's historical tradition of firearm regulation, the indictment must be dismissed. *See, e.g., Range*, 69 F.4th at 98; *United States v. Jones*, No. 3:23-cr-74-DWR-LGI, 2024 WL 86491 (S.D. Miss. Jan. 8, 2024 (granting as-applied challenge to defendant on supervised release

2

for a prior § 922(g)(1) conviction who had prior drug felony convictions and was charged with shooting at individuals in connection with his instant 922(g)(1) offense); *United States v. Quailes*, Case No. 1:21-CR-0176, 2023 WL 5401733 (M.D. Pa. Aug. 22, 2023) (dismissing a § 922(g)(1) charge on an as-applied basis as to a defendant with prior drug trafficking convictions); *United States v. Forbis*, Case No. 23-CR-133-GKF, 2023 WL 5971142 (N.D. Okla. Aug. 17, 2023) (same as to a defendant with prior drug convictions and a DUI); *United States v. Leblanc*, --F. Supp.--, 2023 WL 8756694 (M.D. La. Dec. 19, 2023) (granting as applied challenge where defendant had armed robbery and theft priors); *United States v. Griffin*, No. 21-cr-00693, 2023 WL 8281564 (N.D. Ill. Nov. 30, 2023) (granting as applied challenge where defendant had robbery and controlled substance possession priors); *United States v. Harper*, No. 1:21-CR-0236, 2023 WL 5672311 (M.D. Pa. Sept. 1, 2023) (granting as applied challenge where defendant had 13 prior felonies including multiple armed robberies and drug trafficking convictions); *United States v. Prince*, --F. Supp.--, 2023 WL 7220127 (N.D. Ill. Nov. 2, 2023) (holding § 922(g)(1) facially unconstitutional).

> A. ***Bruen* Step One: The Second Amendment's plain text covers Mr. Alsenat's alleged conduct.**

The plain text of the Second Amendment guarantees the right (1) "of the people," (2) "to keep and bear," (3) "arms." *District of Columbia v. Heller*, 554 U.S. 570, 579–95 (2008). Mr. Alsenat's conduct falls squarely into each category, so it is presumptively protected.

### *1.   Mr. Alsenat is among "the people" protected under the Second Amendment.*

As a preliminary matter, Mr. Alsenat—a lifelong citizen and resident of the United States—is unambiguously part of "the people." In *Heller*, the Supreme Court stated that "the people" in the Second Amendment "unambiguously refers" to "*all Americans*" and "*not an unspecified subset.*" 554 U.S. at 579–81 (emphasis added). In fact, aside from in the Second Amendment, "[t]he unamended Constitution and the Bill of Rights use the phrase 'right of the people' two other times:" once "in the First Amendment's Assembly–and–Petition Clause" and again "in the Fourth Amendment's Search–and–Seizure Clause." *Id.* at 579. Per *Heller*, the phrase has the same meaning each time and "refers to a class of persons who are part of the national community or who have otherwise developed sufficient connections with this country to be considered part of that community." *Id.* at 580 (quoting *United States v. Verdugo–Urquidez,* 494 U.S. 259, 265 (1990)); ("'[T]he people' in the Second Amendment has the same meaning as it carries in other parts of the Bill of Rights").

This interpretation accords with the plain meaning of the word "people" at the time the Bill of Rights was adopted: "[t]he body of persons who compose a community, town, city or nation" – a term "comprehend[ing] all classes of inhabitants." II Noah Webster, *An American Dictionary of the English Language* (1828).

Nothing to suggest otherwise, Mr. Alsenat is among "the people."

### 2. The right to "keep" and "bear" arms includes the right to possess the same outside the home.

With regards to the Second Amendment's guarantee of a right to "keep" and "bear" arms, the Court recognized in *Heller* that the word "keep" means "[t]o have in custody" or to "retain in one's power of possession," and the word "bear" means to "carry." 554 U.S. at 582, 584. And *Bruen* in turn established that the right to "bear" arms includes carrying arms in public outside the home. 142 S. Ct. at 2134–35 ("To confine the right to 'bear' arms to the home would nullify half of the Second Amendment's operative protections.") Thus, Mr. Alsenat's alleged possession of a machine gun, outside of the home, is covered by the right to "bear" arms.

### 3. The right to keep and bear "arms" includes the right to possess both arms and ammunition.

Finally, the term "arms" refers to "[w]eapons of offense, or armour of defense." *Heller*, 554 U.S. at 581. The Supreme Court has construed the term as "extend[ing] . . . to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Id.* at 582. A machinegun is unquestionably a type of "arms." Ammunition is likewise part of the "arms" protected by the Second Amendment because "ammunition is necessary for [] a gun to function as intended." *Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Attorney Gen. of N.J.*, 910 F.3d 106, 116 (3d Cir. 2018); *Jackson v. City of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014) ("without bullets, the right to bear arms would be meaningless").

Because Mr. Alsenat's alleged conduct is squarely covered by a right of "the

5

people" to "bear" "arms," it is presumptively protected by the Second Amendment.

### B. *Bruen* Step Two: There is no historical tradition of regulation to justify Mr. Alensat's disarmament under § 922(o)(1) in this case.

Where, as here, an individual's alleged conduct is shown to be presumptively protected by the plain text of the Second Amendment, a restriction can only stand where the government shows that such a restriction "is consistent with the Nation's historical tradition of firearm regulation," that is, the tradition in existence "when the Bill of Rights was adopted in 1791." *Bruen*, 142 S. Ct. at 2126. Here, the government cannot meet that burden as to § 922(o)(1) generally, nor as to Mr. Alsenat in particular.

#### 1. *The government bears the burden of showing a tradition.*

As a preliminary matter, *Bruen* prescribed two ways of conducting the required historical inquiry for regulations of presumptively protected conduct. *First*, where a statute is directed at a "longstanding" problem that "has persisted since the 18th century," *Bruen* directs a "straightforward" inquiry: if there is no historical tradition of "distinctly similar" regulation, the regulation at issue is unconstitutional. *Bruen*, 142 S. Ct. at 2131 (conducting this "straightforward" inquiry to strike down New York's restriction on public carry of guns). *Second*, where a statute is directed at "unprecedented societal concerns or dramatic technological changes," or problems that "were unimaginable at the founding," then and only then are courts empowered to reason "by analogy." *Id.* at 2132.

In assessing, by the straightforward analysis outlined in *Bruen*, whether the

6

government has met its burden to "establish the relevant tradition of regulation," this Court must apply three principles. *Bruen*, 142 S. Ct. at 2135, 2149 n.25. *First*, where, as here, a challenged regulation addresses a general societal problem that has persisted since the 18th century, that regulation is unconstitutional unless the government shows a tradition of "distinctly similar historical regulation" since that time. *Id.* at 2126. *Second*, to establish a true "tradition" of "distinctly similar historical regulation," the government must show that the same type of regulation was prevalent in the country at the Founding. "[A] single law in a single State" is not enough; instead, a "widespread" historical practice "broadly prohibiting" the conduct in question is required. *Id.* at 2137–38; 2142–45 (expressing doubt that regulations in even three of the thirteen colonies "could suffice."). *Third*, a "longstanding" tradition is required, and that accounts for time. Per *Bruen*, "when it comes to interpreting the Constitution, not all history is created equal" because "Constitutional rights are enshrined with the scope they were understood to have when the people adopted them," which in the case of the Second Amendment, was in 1791. *Id.* at 2136.

In short, to meet the *Bruen* Step Two inquiry, the government must show that there was historical regulation "distinctly similar" to § 922(o)(1) that was prevalent, dates back to the Founding, and applied generally or specifically to those like Mr. Alsenat.

Here, because it cannot do so—either as a general matter or as applied to

7

individuals like Mr. Alsenat—those with no felony convictions—§ 922(o)(1) is unconstitutional on its face and as applied

## CONCLUSION

Because 18 U.S.C. § 922(o)(1), either on its face or as applied to Mr. Alsenat, violates the Second Amendment, this Court should dismiss the indictment here.

Respectfully Submitted,

MICHAEL CARUSO
FEDERAL PUBLIC DEFENDER

By: */s/ Eboni Blenman*
Eboni Blenman
Assistant Federal Public Defender
Special Bar No. A5502989
150 W. Flagler Street, Suite 1700
Miami, Florida   33130
Tel:   305-530-7000
E-Mail Address: eboni_blenman@fd.org

## CERTIFICATE OF SERVICE

I HEREBY certify that on **February 20, 2024**, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Eboni Blenman*
Eboni Blenman