UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:23-CR-60209-GAYLES/AUGUSTIN-BIRCH

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MAXON ALSENAT,

    Defendant.
_____/

**REPORT AND RECOMMENDATION ON
DEFENDANT MAXON ALSENAT'S MOTION TO DISMISS INDICTMENT [DE 35]**

    This cause comes before the Court on Defendant Maxon Alsenat's Motion to Dismiss Indictment Under the Second Amendment. DE 35. The Honorable Darrin P. Gayles, United States District Judge, has referred the matter to the undersigned Magistrate Judge for a Report and Recommendation. DE 38. The United States Government has filed a response, DE 45, and Defendant has filed a reply. DE 46. The Court has carefully considered the Motion and the record and is otherwise fully advised. For the reasons set forth herein, the Court **RECOMMENDS** that Defendant's Motion [DE 35] be **DENIED**.

**I. Background**

    On October 26, 2023, the Government charged Defendant by way of Indictment with possession of a machinegun in violation of 18 U.S.C. § 922(o)(1). DE 3 at 1. As stated in the Indictment, the Government alleges that Defendant possessed a machinegun conversion device, which is a part designed and intended solely for enabling a weapon to "shoot automatically more than one shot, without manual reloading, by a single function of the trigger." *Id.* In response to the

Indictment, Defendant has filed the present Motion to Dismiss Indictment Under the Second Amendment, arguing § 922(o)(1) is unconstitutional on its face or as applied to him. DE 35.

## II. Analysis

In his Motion, Defendant contends the Supreme Court's opinion in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), establishes that his alleged conduct is protected under the Second Amendment. DE 35 at 1. Specifically, Defendant asserts that machineguns are "unquestionably a type of 'arms'" and therefore his alleged conduct is protected by the Second Amendment's "right of 'the people' to 'bear' 'arms.'" *Id.* at 5–6. However, as explained below, the Second Amendment does not protect the possession of a machinegun, even after *Bruen*.

### A. *District of Columbia v. Heller*

Before discussing *Bruen*, it is instructive to briefly discuss the Supreme Court's prior opinion in *District of Columbia v. Heller*, 554 U.S. 570 (2008), and circuit court case law developed thereafter to set forth the Second Amendment jurisprudence existing before *Bruen*. In *Heller*, the Supreme Court examined a District of Columbia law that prohibited the possession of handguns, even within one's home. *Id.* at 573. Reasoning that the inherent right of self-defense is central to the Second Amendment, the Supreme Court held that banning the possession of firearms within one's home did not comport with the Second Amendment. *Id.* at 628–29. Crucially, however, the Supreme Court acknowledged that "the right secured by the Second Amendment is not unlimited." *Id.* at 626. As relevant here, the Supreme Court recognized that the historical right to keep and carry arms, as protected by the Second Amendment, only extended to the types of weapons that are "in common use at the time," as evidenced by "the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" *Id.*

2

Following *Heller*, every circuit court tasked with determining whether machineguns receive protection under the Second Amendment unanimously held that they do not. These courts reasoned and found that machineguns are not "in common use at the time" and are "dangerous" and "unusual" weapons, thus making them fall outside the Second Amendment's protection. *See, e.g.*, *United States v. Zaleski*, 489 F. App'x 474, 475 (2d Cir. 2012) ("Regardless of his membership in the unorganized militia of the State of Connecticut, the Second Amendment does not protect Zaleski's personal possession of machine guns."); *United States v. One (1) Palmetto State Armory PA-15 Machinegun Receiver/Frame, Unknown Caliber Serial No. LW001804*, 822 F.3d 136, 142 (3d Cir. 2016) ("[W]e repeat today that the Second Amendment does not protect the possession of machine guns. They are not in common use for lawful purposes. They are also exceedingly dangerous weapons. As such, *Heller* dictates that they fall outside the protection of the Second Amendment." (citations omitted)); *Hollis v. Lynch*, 827 F.3d 436, 451 (5th Cir. 2016) ("Machineguns are dangerous and unusual and therefore not in common use. They do not receive Second Amendment protection, so we uphold Section 922(o) at step one of our framework."); *United States v. Fincher*, 538 F.3d 868, 874 (8th Cir. 2008) ("[U]nder *Heller*, Fincher's possession of the [machine] guns is not protected by the Second Amendment. Machine guns are not in common use by law-abiding citizens for lawful purposes and therefore fall within the category of dangerous and unusual weapons that the government can prohibit for individual use. . . . Fincher's possession of [machine] guns is not protected by the Second Amendment . . . ."); *United States v. Henry*, 688 F.3d 637, 640 (9th Cir. 2012) ("We agree with the reasoning of our sister circuits that

3

machine guns are 'dangerous and unusual weapons' that are not protected by the Second Amendment.").[1]

### B. *Bruen*

Turning now to *Bruen*, the Supreme Court there expanded upon *Heller* and held that the Second Amendment also protects an individual's right to carry firearms for self-defense outside of one's home. 597 U.S. at 8. Additionally, the Supreme Court articulated its disapproval of the two-step test circuit courts had adopted for challenges under the Second Amendment in the wake of *Heller* and *McDonald v. City of Chicago,* 561 U.S. 742 (2010).[2] Under this two-step test: (1) courts asked whether the challenged regulation restricts activity protected by the Second Amendment; and (2) if the challenged regulation restricts activity protected by the Second Amendment, then courts reviewed the regulation under either intermediate or strict scrutiny. *Bruen*, 597 U.S. at 18; *United States v. Focia*, 869 F.3d 1269, 1285 (11th Cir. 2017) (laying out the same two-step test).

Although the Supreme Court determined the first step to be "broadly consistent with *Heller*, which demands a test rooted in the Second Amendment's text, as informed by history," the Supreme Court found the second step to be "one step too many." *Bruen*, 597 U.S. at 19. Thus, the Supreme Court laid out the following test to properly apply the Second Amendment: (1) if conduct is covered by the plain text of the Second Amendment, the Second Amendment presumptively protects that conduct; and (2) if the conduct is presumptively protected, the Government must then

---

[1] The Court acknowledges that the 11th Circuit and Supreme Court have never held machineguns to fall outside of the protections of the Second Amendment, as Defendant notes in his reply. DE 46 at 2. Defendant, however, has not provided any case law, from any circuit, holding that Second Amendment protections extend to machineguns.

[2] In *McDonald*, the Supreme Court held that the Second Amendment applies to states through the Fourteenth Amendment. *Id.* at 750.

justify its regulation by demonstrating that the regulation is consistent with the nation's historical tradition of firearm regulation. *Id.* at 24.

### C. Defendant's Challenge Under *Bruen*

After *Bruen*, numerous courts within this circuit have addressed the same question as the one presented here: did *Bruen* abrogate post-*Heller* Second Amendment precedent on machineguns? No court has answered that question in the affirmative. *See, e.g.*, *United States v. Bachmann*, No. 8:23-CR-304-VMC-CPT, 2024 WL 730489, at *3 (M.D. Fla. Feb. 22, 2024) (concluding *Bruen* did not abrogate prior Second Amendment precedent on machineguns); *United States v. Hoover*, 635 F. Supp. 3d 1305, 1325 (M.D. Fla. 2022) ("Notably, since *Heller* was decided, every circuit court to address the issue has held that there is no Second Amendment right to possess a machine gun. Hoover provides no basis for concluding that the Supreme Court's decision in *Bruen* would undermine this line of authority." (alteration, quotation marks, and citations omitted)); *United States v. Kazmende*, No. 1:22-CR-236-SDG-CCB, 2023 WL 3872209, at *3 (N.D. Ga. May 17, 2023) ("It is no surprise, then, that courts have continued to hold, post-*Bruen*, that the Second Amendment protections simply do not extend to machineguns."), *report and recommendation adopted*, No. 1:22-CR-00236-SDG, 2023 WL 3867792 (N.D. Ga. June 7, 2023); *United States v. Jones*, No. 1:23-CR-126-TFM, 2023 WL 8374409, at *7 (S.D. Ala. Dec. 3, 2023) ("Therefore, this Court joins with other courts who have found . . . that even post-*Bruen*, Second Amendment protections simply do not extend to machineguns (or in this case one that has been converted to one)."). The Court agrees with these other courts and finds that *Bruen* has not overturned the post-*Heller* Second Amendment precedent on the possession of machineguns.

Again, the first step of the test announced in *Bruen* asks whether an individual's conduct is covered by the plain text of the Second Amendment. *Bruen*, 597 U.S. at 24. And as explained

in *Heller* and acknowledged in *Bruen*, the "Arms" referred to in the Second Amendment, and protected thereby, are those that are in "common use at the time." *See id.* at 47 ("At most, respondents can show that colonial legislatures sometimes prohibited the carrying of 'dangerous and unusual weapons'—a fact we already acknowledged in *Heller*. Drawing from this historical tradition, we explained there that the Second Amendment protects only the carrying of weapons that are those 'in common use at the time,' as opposed to those that 'are highly unusual in society at large.'" (quoting *Heller*, 554 U.S. at 627–29)); *Heller*, 554 U.S. at 570 ("We also recognize another important limitation on the right to keep and carry arms. *Miller* said, as we have explained, that the sorts of weapons protected were those 'in common use at the time.'" (citing *United States v. Miller*, 307 U.S. 174, 179 (1939) (describing historical backdrop of Second Amendment and noting that men were expected to appear for a militia "bearing arms supplied by themselves and of the kind in common use at the time"))). Consequently, given that the plethora of post-*Heller* case law analyzed whether machineguns are covered under the plain text of the Second Amendment—by determining whether they are "in common use"—*see, e.g.*, *Hollis*, 827 F.3d at 451, there is no reason to believe *Bruen* has overruled any of the holdings in those cases.[3] Accordingly, based on the test established by *Bruen*, Defendant's alleged conduct is not covered by the plain text of the Second Amendment and thus receives no protection under the Second Amendment.

### D. Defendant's Common Use Argument

Lastly, citing to Bureau of Alcohol, Tobacco, Firearms and Explosives statistics, Defendant argues that the fact that there are more than 740,000 registered machineguns in the United States demonstrates that machineguns are in common use. DE 46 at 3. In particular, Defendant notes that

---

[3] Defendant has also not provided any case law holding otherwise or casting doubt on the prior precedent.

740,000 is more than quadruple the number of lawfully possessed stun guns in the United States and that Justice Alito characterized stun guns in a concurrence as "widely owned and accepted as a legitimate means of self-defense." *Id.* (quoting *Caetano v. Massachusetts*, 577 U.S. 411, 420 (2016) (Alito, J., concurring)). However, the Fifth Circuit previously rejected this same argument. *Hollis*, 827 F.3d at 450 ("Hollis . . . relies on Justice Alito's *Caetano* concurrence, arguing that because the number of machineguns in existence is similar to the number of stun guns, machineguns are also in common use. But as explained above, Justice Alito did not think the absolute number by itself was sufficient. Rather, he thought the number was sufficient when paired with the statistic that stun guns may be lawfully possessed in 45 states. The same showing cannot be made for machineguns."); *see also Caetano*, 577 U.S. at 420 (Alito, J., concurring) ("The more relevant statistic is that '[h]undreds of thousands of Tasers and stun guns have been sold to private citizens,' who it appears may lawfully possess them in 45 States."). The Court finds the Fifth Circuit's analysis and rejection of this argument to be persuasive.

Furthermore, although Defendant does not engage in a historical analysis within his Motion, the Government includes a brief historical analysis of machineguns within its response. DE 45 at 5–8. To summarize, the Government explains that machineguns only entered the civilian market after World War I and quickly became the weapon of choice for criminals, who were able to use machineguns, such as "Tommy Guns," to overpower and outgun law enforcement officials. *Id.* at 5, 7. As a result, states across the nation implemented machinegun bans. *Id.* at 7; *see also id.* at 5–7 (providing examples of the nation's historical regulation of dangerous and unusual weapons, such as bowie knifes, slung shots, brass knuckles, and billy clubs). The Court concludes this analysis comports with the analysis utilized by other courts to find that machineguns are not in common use and have historically been regulated as dangerous and unusual weapons. *See, e.g.*,

*One (1) Palmetto State Armory*, 822 F.3d at 142–43 (noting that machineguns were primarily used by criminals and are dangerous weapons that can overpower other kinds of firearms). As such, the Court finds that machineguns are not in common use.

### III. Recommendation

For the foregoing reasons, the Court **RECOMMENDS** that Defendant's Motion Dismiss Indictment Under the Second Amendment [DE 35] be **DENIED**.

Within fourteen days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(a). The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1 (2014).

**DONE AND SUBMITTED** in Chambers at Fort Lauderdale, Florida, this 25th day of March, 2024.

_____
PANAYOTTA AUGUSTIN-BIRCH
UNITED STATES MAGISTRATE JUDGE