UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.   23-60209-CR-LEIBOWITZ/AUGUSTIN-BIRCH

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MAXON ALSENAT,

    Defendant.

_____/

## MR. ALSENAT'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Maxon Alsenat, through undersigned counsel and pursuant to 28 U.S.C. § 636, hereby objects to the Report and Recommendation (the "R&R"), DE 48, which was entered by Magistrate Judge Panayotta Augustin-Birch on March 25, 2024, in regard to his Motion to Dismiss Indictment Under the Second Amendment, DE 35.

Mr. Alsenat respectfully objects to the following conclusions in the R&R:

(1) That the Second Amendment does not protect the possession of a machine gun (DE 48 at 2);

(2) That machine guns fall within a class of "dangerous and unusual" weapons (*Id.* at 3);

(3) That machine guns are not "in common use" (*Id.* at 6);

(4) That the statute at issue is consistent with a historical tradition of regulating "dangerous and unusual" weapons and/or machine guns (*Id.* at 7).

1

Relying on *Heller* and certain pre-*Bruen,* out-of-circuit opinions, the R&R erroneously concludes that the Second Amendment does not protect the possession of machine guns. *Id*. at 2–3.

As an initial matter, the *Heller* Court examined the validity of a District of Columbia statute which restricted individual ownership of <u>handguns</u>. The constitutionality of machine gun disarmament laws was not before the Court, and any statements in the opinion addressing the broader contours of the Second Amendment and indicating that its protections extend only to those weapons "in common use" are thus "dicta." *United States v. Scroggins*, 599 F.3d 433, 451 (5th Cir. 2010).

Of course, lower courts should "give great weight to Supreme Court dicta," *N.L.R.B. v. Bluefield Hosp. Co., LLC*, 821 F.3d 534, 541 n.6 (4th Cir. 2016), at least when the Supreme Court's opinion engages in an "extended discussion" of an issue, the Court gives "full and careful consideration to the matter," and the issue is "important, if not essential, to the Court's analysis," *Hengle v. Treppa*, 19 F.4th 324, 346-47 (4th Cir. 2021). Ultimately, however, lower courts "are not bound by dicta or separate opinions of the Supreme Court." *Myers v. Loudoun Cty. Pub. Sch.*, 418 F.3d 395, 406 (4th Cir. 2005). Where the Supreme Court's discussion of an issue is "peripheral" or "cursory," courts need not defer to it. *Hengle,* 19 F.4th at 347.

*Heller's* discussion of "common use" is exactly the kind of Supreme Court dicta unentitled to deference. That dictum was "unaccompanied by any analysis," id., and

was—at best—"peripheral" to the questions at issue, *Hengle*, 19 F.4th at 347. The *Heller* Court provided no "extended discussion," of the limits of the Second Amendment. *Hengle*, 19 F.4th at 346. Indeed, the *Heller* Court noted that it "d[id] not undertake an exhaustive historical analysis today of the full scope of the Second Amendment." *Heller*, 554 U.S. at 626.

Importantly, the Supreme Court has never held that machineguns are without Second Amendment protection. Moreover, the Eleventh Circuit has similarly never reached such a conclusion.

Accordingly, machine guns are not excluded from the "Arms" referenced in the Second Amendment. The Amendment "extends, prima facie, to *all* instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Heller*, 554 U.S. at 582 (emphasis added).

In reaching the opposite conclusion, the R&R relies on certain out-of-circuit cases for the proposition that machine guns are "dangerous and unusual" and so not afforded Second Amendment protection. DE 48 at 3. However, the largely conclusory explanations that these opinions offer for excluding machineguns from Second Amendment coverage are unconvincing. These cases assert—without any empirical data or analysis—that machine guns are primarily possessed by those engaged in criminal activities. From this, they conclude machine guns are "dangerous and unusual" and receive no protection under the Second Amendment. These cases additionally fail to engage with any legitimate purpose of machine gun ownership—

3

namely self-defense. Accordingly, these opinions do not reflect a well-reasoned analysis but instead an echo-chamber in which circuits simply cite to one another but where the underlying premise (regarding criminality and machine gun ownership) is not borne out by data or research.

Similarly, these circuits take the view, as adopted by the R&R, DE 48 at 6–7 that machine guns are not in common use. However, as of April 2020, there were more than 726,000 machineguns lawfully possessed in the United States and registered with the Bureau of Alcohol, Tobacco, Firearms and Explosives.1 In other words, today, several hundred thousand machineguns are owned by law-abiding Americans. Mr. Alsenat maintains that but-for-the regulatory landscape—on both the state and federal level—banning machine guns, this figure would be even higher.

The R&R suggests that the absolute number of machine guns owned does not suffice to establish common use but that we must look to statistics regarding the number of states that permit ownership of the same. (DE 48 at 7). This cannot be so. As Judge Easterbrook observed in *Friedman v. City of Highland Park*, 784 F.3d 406 (7th Cir. 2015), "it would be absurd to say that the reason why a particular weapon can be banned is that there is a statute banning it, so that it isn't commonly owned." *Id*. at 409; *see also Maloney v. Singas*, 351 F. Supp. 3d 222, 237–38 (finding ownership number adequate to establish common use "especially given" the legal restrictions

---

1 U.S. Dep't of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives, *Firearms Commerce in the United States: Annual Statistical Update 2020*, 15–16 (2021), *available at* https://www.atf.gov/file/149886/download.

that had been imposed on ownership of the weapon). Given the number of machine guns lawfully possessed in the face of significant legal restrictions, machine guns are in common use.

Finally, the R&R fails to hold the government to its burden of establishing that the United States has a historical tradition of regulating <u>mere possession</u> of a machine gun.

In *Bruen*, the Court clarified the general test to be applied to firearm restrictions challenged under the Second Amendment:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command.

*New York State Rifle & Pistol Association, Inc., et al. v. Bruen*, 142 S. Ct. 2111, 2129–30 (2022) (internal quotation marks omitted).

In its Response, the government cites historical ordinances and statutes criminalizing certain conduct related to "dangerous and unusual weapons." (DE 45 at 5–6). More specifically, these statutes criminalized the concealed carry of certain classes of weapons and separately the carrying or bearing of a weapon as to cause affray or terror. *Id*.

Notably, while these statutes reflect regulation as to the manner of public carry, none of them criminalize the conduct at issue here—mere possession as is outlawed under § 922(o). Notably, while these statutes reflect regulation as to the

5

manner of public carry, none of them criminalize the conduct at issue here—mere possession as is outlawed under § 922(o).

Moreover, the government offers no historical analog to suggest that any "ban" that may have existed, did so to the degree that it exists today. More specifically, the government failed to establish the existence of a total prohibition applying indiscriminately as is the case with the instant statute. Moreover, the government has failed to establish that individuals such as Mr. Alsenat—with no prior felony convictions—were subject to a total prohibition on mere possession of a particular class of weapon, again as is the case here.

## CONCLUSION

Pursuant to 28 U.S.C. § 636, Mr. Alsenat respectfully requests a de novo review of those portions of the R&R to which he objects. As set forth above and in DE 35 and DE 46, the Court should dismiss the indictment in this case because 18 U.S.C. § 922(o)(1), either on its face or as applied to Mr. Alsenat, violates the Second Amendment.

Respectfully Submitted,

HECTOR A. DOPICO
INTERIM FEDERAL PUBLIC DEFENDER

By: */s/ Eboni Blenman*
Eboni Blenman
Assistant Federal Public Defender
Special Bar No. A5502989
150 W. Flagler Street, Suite 1700
Miami, Florida   33130
Tel:   305-530-7000
E-Mail Address: eboni_blenman@fd.org

## CERTIFICATE OF SERVICE

I HEREBY certify that on **April 11, 2024**, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Eboni Blenman*
Eboni Blenman